# EXHIBIT 1

## SHIPPER/BROKER TRANSPORTATION AGREEMENT

THIS AGREEMENT, "Agreement", made and intended to be effective this 24th day of October 2008 by and between National Elite Transportation, LLC, a Delaware limited liability company ("NATIONAL ELITE"), and Angel Food Ministries ("SHIPPER"), collectively, the "PARTIES".

### I. RECITALS

A. WHEREAS NATIONAL ELITE is licensed as a Property Broker by the Federal Motor Carrier Safety Administration (FMCSA), or by appropriate State agencies, and as a licensed broker, arranges for freight transportation; and

B. WHEREAS SHIPPER, to satisfy some of its transportation needs, desires to utilize the services of NATIONAL ELITE to arrange for transportation of SHIPPER's freight.

NOW THEREFORE, intending to be legally bound, NATIONAL ELITE and SHIPPER agree as follows:

### II. AGREEMENT

1. **TERM.** Subject to paragraph 11, the term of this Agreement shall be two (2) years, commencing on the date above, and shall automatically renew for successive one year periods; provided, however, that either Party may terminate this Agreement on 60 days written notice to the other Party, if without cause, or as otherwise provided in this Agreement.

2. **SERVICE.** NATIONAL ELITE agrees to arrange for transportation of SHIPPER's freight, with a carrier who is duly registered with the Department of Transportation ("DOT") pursuant to 49 U.S.C. 13902 and 13905. It is understood by the parties that NATIONAL ELITE is not actually performing the transportation of the SHIPPER's freight but will be arranging for the transportation of SHIPPER's freight.

3. **VOLUME.** SHIPPER agrees to tender a minimum of three (3) shipments per year to NATIONAL ELITE SHIPPER is not restricted from tendering freight to other Brokers, or directly to motor carriers. NATIONAL ELITE is not restricted from arranging Transportation for other parties. SHIPPER shall be responsible to NATIONAL ELITE for timely and accurate delivery instructions and description of the cargo, including any special handling requirements, for any shipment.

4. **FREIGHT CARRIAGE:** NATIONAL ELITE warrants that it has entered into, or will enter into, bilateral contracts with each Carrier it utilizes in the performance of this Agreement. NATIONAL ELITE further warrants that those contracts comply with all applicable federal and state regulations and shall include the following provisions:

   (a) Carrier shall defend, indemnify and hold harmless NATIONAL ELITE and SHIPPER and their directors, employees, officers, and affiliated parent and subsidiary companies (the "Indemnified Parties") from and against all claims, liabilities, losses, damages, fines, penalties, payments, costs, and expenses (including, without limitation, reasonable legal fees, but excluding consequential damages) caused by and resulting from (i) the negligence or intentional misconduct of Carrier or its employees or agents, or (ii) Carrier or its employees' or agents' violation of applicable laws or regulations.

   (b) Carrier shall agree that its liability for cargo loss or damage shall be that of a Common Carrier as provided for in 49 USC 14706 (the Carmack Amendment). Exclusions in Carrier's insurance coverage shall not exonerate Carrier from this liability.

   (c) Carrier shall agree to maintain at all times during the term of the contract, insurance coverage in amounts required by law, but in any event with limits not less than the following:

| | |
|---|---|
| Commercial General Liability | $1,000,000.00 |
| Auto Liability/Property Damage | $100,000,000.00 (or such greater amount as is required by law) |
| Cargo Liability - | $100,000.00 |
| Worker's Compensation - | as required by law. |

(d) Carrier shall agree that the provisions contained in 49 CFR 370.1 et seq, shall govern the processing of claims for loss, damage, injury or delay to property and the processing of salvage based on the financials of net. Except with the express written consent of Shipper, Carrier shall not under any circumstances whatsoever cause, suffer or permit either (i) the sale or disposal of any commodities constituting the cargo or (ii) any offer to sell or dispose of any such Commodities, whether as salvage or otherwise. In the event of an accident involving any Commodities being transported by Carrier for Shipper, Carrier shall not unilaterally dispose of the Commodities or perform any act that would prejudice the right of Shipper. If the product is determined to be salvageable by the Shipper, any salvage or rendering value, less associated costs, shall be credited to the carrier's account to offset such loss liabilities. Title to such Commodities and the right to determine disposition of same remains with Shipper during transport and shall pass to Customer upon delivery and acceptance of such Commodities occurring while in the custody, possession or control of Carrier hereunder or resulting from Carrier's performance or failure to perform the service provided in this Agreement, except to the extent such performance is excused under Section 13.10 hereof.

(e) Carrier shall authorize NATIONAL ELITE to invoice SHIPPER for services provided by the Carrier, Carrier shall further agree that NATIONAL ELITE is the sole party responsible for payment of its invoices and that, under no circumstance, will Carrier seek payment from the shipper, consignee or NATIONAL ELITE' customer.

(f) Carrier shall agree that, at no time during the term of its contract with NATIONAL ELITE, shall it have an "Unsatisfactory" safety rating as determined by the Federal Motor Carrier Safety Administration (FMCSA). If Carrier receives an "Unsatisfactory" safety rating, it shall immediately notify NATIONAL ELITE.

(g) Carrier shall agree that the terms and conditions of its contract with NATIONAL ELITE shall apply on all shipments it handles for NATIONAL ELITE. Any terms in a tariff that are referenced in the carrier contract which are inconsistent with this Agreement shall be subordinate to the terms of this Agreement.

(h) Carrier shall expressly waive all rights and remedies under Title 49 U.S.C., Subtitle IV, Part B to the extent they conflict with the contract.

(i) NATIONAL ELITE further warrants it will require proof of insurance and operating authority from each Carrier and, should NATIONAL ELITE utilize the services of any carrier or other broker on SHIPPER's behalf, which carrier and/or broker does not have proof of insurance and/or operating authority, NATIONAL ELITE agrees to indemnify and hold harmless SHIPPER from all legitimate claims not paid by Carrier, including but not limited to cargo loss and damage claims.

(j) NATIONAL ELITE understands that SHIPPER is principally engaged in the transport of food and food-related products intended for human consumption and warrants that it will require each Carrier to only make use of equipment, machinery, and vehicles that are suitable for such transportation and that would not reasonably expose SHIPPER to questions or concerns regarding the health or safety associated with making use of those transported products.

5. **RECEIPTS AND BILLS OF LADING.** If requested by SHIPPER, NATIONAL ELITE agrees to provide SHIPPER with proof of acceptance and delivery of such loads in the form of a signed Bill of Lading or Proof of Delivery, as specified by SHIPPER. SHIPPER's insertion of NATIONAL ELITE' name on the bill of lading shall be for SHIPPER's convenience only and shall not change NATIONAL ELITE' status as a property broker. The terms and conditions of any freight documentation used by NATIONAL ELITE or carrier selected by NATIONAL ELITE may not supplement, alter, or modify the terms of this Agreement.

6. **PAYMENTS.** Unless otherwise stated in a separate Rate Confirmation Agreement, NATIONAL ELITE will charge and SHIPPER will pay the rates and charges to be mutually agreed to and to be set forth in Appendix A, for transportation services performed under this Agreement. The Rate Confirmation Agreement shall be in the form specified in Appendix B. A Rate Confirmation Agreement may be signed and agreed to by NATIONAL ELITE and SHIPPER before each shipment to which such Rate Confirmation Agreement applies, NATIONAL ELITE represents and warrants that there are no other applicable rates or charges except those established in this Agreement or in any Rate Confirmation Agreement signed by SHIPPER. Payment by SHIPPER will be made within thirty (30) days of receipt by SHIPPER of NATIONAL ELITE's undisputed freight bill, bill of lading, clear delivery receipt, and any other necessary billing documents enabling SHIPPER to ascertain that service has been provided at the agreed upon charge. In the event service is provided and it is subsequently discovered that there was no applicable rate in Appendix A, or a separate rate confirmation sheet, the parties agree that the rate paid by SHIPPER and collected by NATIONAL ELITE shall be the agreed upon contract rate unless objected to by SHIPPER within 10 days. NATIONAL ELITE agrees that SHIPPER has the exclusive right to handle all billing of freight charges to the Customer for the transportation services provided herein, and, as such, NATIONAL ELITE agrees to refrain from all collection efforts against receiver, consignor, consignee or the Customer. NATIONAL ELITE will indemnify and hold harmless SHIPPER and its Customers from any and all claims by Carriers or their subcontractors for any and all transportation charges. SHIPPER agrees that it shall not offset any payments owing to NATIONAL ELITE.

7. **CLAIMS.** Unless otherwise agreed by the parties in Appendix A, in the event of a cargo loss, damage or shortage claim, SHIPPER agrees to notify NATIONAL ELITE immediately by phone and to subsequently submit to NATIONAL ELITE a written claim, fully supported by all relevant documentation, including but not limited to the signed delivery receipt, listing the nature and cause of the claim for cargo damage within twenty (20) days following the date of delivery. No claims or allowances for shortages, damage or delay will be considered unless clearly noted on the delivery receipt or bill of lading signed by the consignee at delivery. NATIONAL ELITE assumes no liability for cargo loss, damage, or shortage. However, NATIONAL ELITE agrees to submit, negotiate and settle all cargo claims with the responsible carrier and to keep SHIPPER advised of the status of all such claims. Upon request by SHIPPER, NATIONAL ELITE shall assign its rights against the carrier to SHIPPER. Nothing herein shall be construed to restrict any right or cause of action SHIPPER may have against any carrier involved with the transportation of SHIPPER's shipment.

8. **INSURANCE.** NATIONAL ELITE agrees to procure and maintain at its expense, at all times during the term of this Agreement, the following insurance coverage amounts:

    (a)   Commercial general liability insurance                    $1,000,000.00
          covering bodily injury and property damage

    (b)   Contingent Cargo Insurance                                $100,000.00

9. **SURETY BOND.** NATIONAL ELITE shall maintain a surety bond or trust fund agreement as required by the FMCSA in the amount of $10,000. NATIONAL ELITE shall provide AFM with a copy of the bond or trust fund agreement.

10. **DEFAULT.** Both parties will discuss any perceived deficiency in performance and will promptly endeavor to resolve all disputes in good faith. However, if either party materially fails to perform its duties under this Agreement, the party claiming default may treat the deficiency as a material breach of this Agreement ("for-cause") and terminate this Agreement immediately by providing notice as described under paragraph 16.

11. **INDEMNIFICATION.** The NATIONAL ELITE shall defend, indemnify and hold harmless SHIPPER and its directors, employees, officers, and affiliated parent and subsidiary companies (the "Indemnified Parties") from and against all claims, liabilities, losses, damages, fines, penalties, payments, costs, and expenses (including, without limitation, reasonable legal fees, but excluding consequential damages) caused by and resulting from (i) the negligence or intentional misconduct of NATIONAL ELITE or its employees or agents, (ii) NATIONAL ELITE' or its employees violation of this Agreement, or (iii) NATIONAL ELITE' or its employees' or agents' violation of applicable laws or regulations.

SHIPPER shall defend, indemnify and hold NATIONAL ELITE and its employees and Carriers harmless from and against all claims, liabilities, losses, damages, fines, penalties, payments, costs and expenses (including, without limitation, reasonable legal fees, but excluding consequential damages) caused by and resulting from (i) the negligence or intentional misconduct of SHIPPER and its employees, (ii) SHIPPER's or its employees violation of this Agreement, or (iii) SHIPPER's or its employees violation of applicable laws or regulations.

12. **ASSIGNMENT/MODIFICATIONS OF AGREEMENT.** Neither party may assign or transfer this Agreement, in whole or in part, without the prior written consent of the other party. No amendment or modification of the terms of this Agreement shall be binding unless in writing and signed by the PARTIES

13. **SEVERABILITY/SURVIVABILITY.** In the event that the operation of any portion of this Agreement results in a violation of any law, or any provision is determined by a court of competent jurisdiction to be invalid or unenforceable, the Parties agree that such portion or provision shall be severable and that the remaining provisions of the Agreement shall continue in full force and effect. The representations and obligations of the PARTIES shall survive the termination of this Agreement for any reason.

14. **INDEPENDENT CONTRACTOR.** It is understood between NATIONAL ELITE and SHIPPER, that NATIONAL ELITE is not an agent for the Carrier or SHIPPER and shall remain at all times an independent contractor. SHIPPER does not exercise or retain any control or supervision over NATIONAL ELITE, its operations, employees, or carriers.

15. **NONWAIVER.** Failure of either party to insist upon performance of any of the terms, conditions or provisions of this Agreement, or to exercise any right or privilege herein, or the waiver of any breach of any of the terms, conditions or provisions of this Agreement, shall not be construed as thereafter waiving any such terms, conditions, provisions, rights or privileges, but the same shall continue and remain in full force and effect as if no forbearance or waiver had occurred.

16. **NOTICES.** Unless the PARTIES notify each other in writing of a change of address, any and all notices required or permitted to be given under this Agreement shall be in writing (or fax with machine imprint on paper acknowledging successful transmission) and shall be addressed to the addresses for the parties below:

NATIONAL ELITE TRANSPORTATION, LLC
Address: 1501 E 8th St
Liberal, KS 67901

Phone: 1-800-472-9904
Fax: 1-479-750-1173

ANGEL FOOD MINISTRIES
Address: 1620 S Broad St
Monroe GA 30655

Phone: 1-770-267-7015
Fax: 1-770-266-2060

17. **FORCE MAJEURE.** Neither Party shall be liable to the other for failure to perform any of its obligations under this Agreement during any time in which such performance is prevented by fire, flood, or other natural disaster, war, embargo, riot, civil disobedience, or the intervention of any government authority, or any other cause outside of the reasonable control of the SHIPPER or NATIONAL ELITE, provided that the Party so prevented uses its best efforts to perform under this Agreement and provided further, that such Party provide reasonable notice to the other Party of such inability to perform.

18. **GOVERNING LAW AND DISPUTE RESOLUTION.** This Agreement shall be deemed to have been drawn in accordance with the statutes and laws of the State of Georgia and in the event of any disagreement or dispute, the laws of this state shall apply and suit must be brought in this state.

19. **CONFIDENTIALITY.** NATIONAL ELITE shall not utilize SHIPPER's name or identity in any advertising or promotional communications without written confirmation of SHIPPER's consent and the PARTIES shall not publish, use or disclose the contents or existence of this Agreement except as necessary to conduct their operations pursuant to this Agreement. Neither party shall disclose any details or information related to the services rendered herein, any business methods financial information or proprietary information concerning the other party to any third-party unless given prior written consent by such party or compelled to do so by a court having competent jurisdiction. NATIONAL ELITE will require Carriers and/or other brokers to comply with this confidentiality clause.

20. **ENTIRE AGREEMENT:** This Agreement, including all Appendices and Addenda, constitutes the entire agreement intended by and between the PARTIES and supersedes all prior agreements, representations, warranties, statements, promises, information, arrangements, and understandings, whether oral, written, expressed or implied, with respect to the subject matter hereof. Any modifications to this contract shall be initialed by both PARTIES to be valid.

IN WITNESS WHEREOF, the PARTIES hereto have caused this Agreement to be executed in their respective names by their fully-authorized representatives as of the dates first above written.

"NATIONAL ELITE"  
National Elite Transportation, LLC

"SHIPPER"  
Angel Food Ministries

Signed

Date

Printed

Title

Signed - *[signature: Wesley Joseph Wingo]*

Date – October 24, 2008

Printed – Wesley Joseph Wingo

Title - Founder and CEO

- 5 -

## APPENDIX A

Rates. In accordance with Paragraph 6 of the Agreement, the rates applying to the transportation services to be provided pursuant to the Agreement are set forth below:

Subject to the minimum rate per load set forth below, the rate per load shall be the actual per load amount charged by the carrier engaged by NATIONAL ELITE to transport SHIPPER's freight pursuant to this Agreement, plus twenty percent (20%); provided, however, fuel surcharge, holdover, and detention charges shall be excluded from the amount charged by the carrier when calculating the additional 20% compensation.

Through this agreement, AFM does not want to lose the ability to secure the best possible rate on all routes. In order to promote aggressive negotiations on rates, AFM will compensate NCI 30% on all rate savings secured as an incentive.

The last Monday of every Quarter, AFM will review published rates for all routes. By that Friday, AFM will confirm rate ceilings for routes this will set the parameters for the savings incentive to NCI.

Payment terms are **fifteen (15)** days from date of invoice.

Mileage shall be calculated by PC Miler, practical mileage, version 20, using zip code to zip code.

Maximum weight per shipment is not to exceed 44,000 pounds including pallets, dunnage, bulkheads, etc.

Carrier "Quick" pay (aka fast pay) - At times carriers and/or brokers will request immediate payment for a freight invoice from NATIONAL ELITE. Should such payment terms be agreed to by both NATIONAL ELITE and the carrier or broker, such agreement shall be a separate and distinctly independent transaction and strictly between NATIONAL ELITE and the carrier or broker and as such will not affect the rate per load owed by SHIPPER pursuant to this Agreement.

1. Accessorial Charges and Terms. The PARTIES agree to the accessorial charges and terms set forth below:

   Stop off charge – 1st stop $75, 2nd stop $75, 3rd stop $75, 4th (or more) additional stops @ $75 each.

   Fuel surcharge schedule – tractor only – Angel Food Ministries FSC Rate.

   Fuel surcharge schedule – refrigeration unit - _____N/A_____.

   Circuitous (i.e. out of route) mileage – road closings, bridges closings, re-routing for weather related detours etc. - calculated at same rate per mile as the line haul charge on the load.

   Holdover – trailer w/ refrigeration – case-by-case basis with maximum charge for truck with driver & reefer trailer "on-site" not to exceed $400 per occurrence **without prior authorization from AFM**. Reefer trailers only, with no driver, no truck, not to exceed $200 per occurrence **without prior authorization from AFM**.

   Layover – case-by-case basis.

   Pallets – where required, charged at actual cost.

   Loading/unloading – where required for driver to assist, charged at actual cost **with receipt and prior approval by AFM**

   Dunnage – carrier is not responsible for cost of, or disposal, and assumes no liability for dunnage, pallets, Styrofoam, bulkheads, paper, plastic, etc.

   Collect shipments – where applicable, $25.00 handling charge per occurrence and tendered only after NATIONAL ELITE has agreed in writing and in advance to extend credit to any third (3rd) party.

   Driver Assist – loading and/or unloading where applicable charged at actual cost **with prior approval by AFM**

   Truck Ordered, Not Used (i.e. TONU) - $250 per occurrence.

   Truck stand-by (on-site) – case-by-case basis & negotiated to lowest price.

   Second Day Charge (in cases whereby carrier makes delivery at one stop and can't get the 2nd stop same day due to shipping/rec. hours where picks/stops are < 350 miles apart) - Normal fee is $350 but negotiated on a case-by-case basis.

   Expedited Service Charge (guaranteed, on-time delivery) - $3.00/mile.

   Seasonal surcharge (i.e. produce season, etc.) - case-by-case basis.

   Team Service charge – add $250 to normal mileage charge or 20 cents per mile, whichever is greater.

- 6 -

Deadhead Charge – case-by-case basis.

Diversion (a/k/a extension of the load resulting from a change in, or additional consignee) - $50 per occurrence

### APPENDIX A (continued)

Return of damaged goods – same rate applies, in & out.

Detention charges, with power - case-by-case basis-normal charges - $50 after three (3) hours not to exceed $400 (8 hours @ $50) per 24 hour period.

Re-delivery charge – due to no fault of carrier, but have to re-schedule for another date/time – see layover.

Trailer spotting – when required and where applicable at actual cost.

NYC borough charges - $250.

Tolls – billed to AFM

at actual cost.

2. **Right to Audit**. National Elite agrees and consents that SHIPPER, upon reasonable prior written notice to NATIONAL ELITE, may review any freight invoices and any related supporting documents for any reasonable period of time during the term of this Agreement. If reasonable, NATIONAL ELITE will provide SHIPPER supporting freight invoices and related supporting documentation via Fax or Email. If not reasonable to send via Fax or Email, then such reviews will be performed at NATIONAL ELITE's facility.

3. **Freight Loss, Damage or Delay**. In accordance with Paragraph 7 of the Agreement, any special provisions dealing with cargo loss and damage claims are set forth below:

N/A

"NATIONAL ELITE"
National Elite Transportation, LLC

"SHIPPER"
Angel Food Ministries

By:
Printed:

By:
Printed: October 24, 2008

## APPENDIX B

The Rate Confirmation Sheet has been intentionally omitted.

- 8 -